# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE No. 20-CV-21212-BB

FILED BY___PG___D.C.

JUN 10 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

KHALED ELBEBLAWY,
   *Plaintiff,*

v.

UNITED STATES OF AMERICA,
   *Defendant.*

_____/

## MEMORANDUM OF LAW
## IN SUPPORT OF THE MOTION TO VACATE
## <u>PURSUANT TO 28 U.S.C. § 2255</u>

   **COMES NOW,** Khaled Elbeblawy ("the Plaintiff"), and files this, his Memorandum of Law in support of his Amended Motion to Vacate [ECF No. ____ ] the Judgement of Conviction [ECF No. 90] pursuant to Title 28 U.S.C. § 2255. The Plaintiff respectfully moves this Court for the entry of an order to VACATE the Judgement of Conviction based on the facts and citations of authority set forth below, or in the alternative, to set an evidentiary hearing in this matter.

### I.      INFORMATION AND BACKGROUND

   1.      On October 23, 2015, Mr. Elbeblawy was arrested and detained at his residence, a week after following his return from a trip overseas.

   2.      On October 22, 2015, the Grand Jury for the Southern District of Florida returned an indictment against the Plaintiff for the *identical set of facts and conduct,* previously alleged and then dismissed in "bad faith" by the United States a scant thirty (30) days prior. See *United States v. Elbeblawy,* SDFL Case No. 1:15-CR-20820-BB, at ECF No. 3.

1

3.      On January 21, 2016, following a one (1) week trial, Mr. Elbeblawy was convicted by a jury of his peers [ECF No. 90].

4.      On August 31, 2016, following his adjudication of guilt, this Court sentenced the Plaintiff to 240 months imprisonment for conspiracy to commit Healthcare fraud in violation of 18 U.S.C § 1349 (count 1), and 60 months imprisonment for conspiracy to defraud the United States by paying Healthcare kickbacks in violation of 18 U.S.C. § 371. Further, this Court assessed Mr. Elbeblawy, $36,400,957 in restitution, and $36 million in forfeiture [ECF No.170 ].

5.      On September 12, 2016, the Plaintiff timely filed his Notice of Appeal [ECF No. 172]. On appeal, USCA Appeal No. 16-16048C the Eleventh Circuit affirmed Mr. Elbeblawy's conviction and sentence, but vacated and remanded this Court's forfeiture order, directing it to be amended as instructed. See *United States v. Elbeblawy,* 899 F.3d 925 (11ᵗʰ Cir., 2018).

6.      On remand this Court held a hearing to review the forfeiture matter and subsequently issued an amended forfeiture order on February 24, 2020. See ECF No. 201.

7.      On February 24, 2020, the Plaintiff filed a timely Notice of Appeal [ECF No. 202] on the amended forfeiture order. On appeal, USCA Appeal No. 20-10767-A, the Eleventh Circuit affirmed the amended forfeiture order by this Court.

8.      On or about April 2020, Mr. Elbeblawy filed a Petition for Writ of Certiorari. The petition was denied on June 7, 2021. See *Elbeblawy v. United States,* 141 S. Ct. 2740; 210 L. Ed. 2d 894, 2021 Lexis 2986; 89 U.S.L.W. 3410.

## II.      STANDARDS OF REVIEW

9.      The matter before this Court encompasses two (2) distinct categories of error, each with distinct standards under which claims of that type must be reviewed. "This [type of] case requires an examination of the proper doctrines of structural error and ineffective assistance of counsel. They are

intertwined, because the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective assistance claim…". See *Weaver v. Massachusetts*, 137 S. Ct. 1899, 198 L. Ed. 2d 420, 426.

## A.    STRUCTURAL ERRORS

10.    An error is deemed structural when it "affect[s] the framework within which the trial proceedings." See *Arizona v. Fulminate*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed 302, 309.

11.    There are three rationales under which an error may be deemed structural. First, an error is structural when the constitutional protection at issue does not protect the defendant from erroneous conviction but instead protects from some other interest, e.g., the defendant's right to conflict free counsel, or his or her right to self-representation. See Weaver, 198 L. Ed. 2d at 426 (quoting *United States v. Gonzalez – Lopez,* 548 U.S. 140, 149, n. 4).  Second, an error is structural, when the error's effects are simply too difficult to measure, e.g., when a defendant is denied the right to select his or her own attorney, making it almost impossible for the government to show that the error was "harmless beyond a reasonable doubt". *Id.* (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705). Third, some errors are always structural because fundamental unfairness cannot be avoided, e.g., when an indigent defendant is denied an attorney. *Id.* citing *Gideon v. Wainwright,* 372 U.S. 335, 343-345, 83 S. Ct. 792, 9 L. Ed. 2d 799.

12.    In this case, like *Weaver,* "a critical point is that an error *can* count as structural even if it does not lead to fundamental unfairness in every case." *Id.* at 426. Put differently, the specific contours of the structural error *in this case* may not rise to the threshold of fundamental unfairness in every case.

13.    When a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right. When a structural error is

3

raised in the context of an ineffective assistance claim, however, the defendant must show prejudice in order to obtain a new trial, See Id. at 137 S. Ct. 1913.

## B.    TRIAL ERROR

14.    Trial error occurs during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on the trial.

15.    In order to recognize a trial error in the context of a collateral attack as ineffective assistance of counsel, the defendant must demonstrate both prongs under *Strickland v. Washington,* 466 U.S. 668, 687, 104, S. Ct. 2052, 80 L. Ed. 2d. 674.

16.    The standard for a finding of deficient performance of counsel first requires showing that counsel made an error so serious that counsel was not functioning as "counsel" of the type contemplated by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the outcome of the proceeding.  Stated another way, the defendant must show but for counsel's deficient performance there existed a reasonable probability of a different outcome in his or her case or, that the violation was so serious as to render the trial fundamentally unfair. See *Weaver,* 137 S. Ct. at 1903 – 1904.

17.    Moreover, a reviewing court accords trial counsel broad deference that the challenged conduct was the product of a reasoned trial strategy. See *Wilkerson v. Collins,* 950 F. 2d 1054, 1065 (5th Cir, 1992). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel, *unless* it is so ill chosen that it permeates the entire trial with obvious unfairness." See *United States v. Jones,* 287 F. 3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio,* 717 F. 2d 199, 206 (5th Cir, 1983).

### C.    HARMLESS ERROR

18.    A trial error may be deemed "harmless" if the government can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." See *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

### III.    ARGUMENTS AND CITATIONS OF AUTHORITY

19.    The Plaintiff avers the judgment in this matter must be VACATED based on structural errors that rendered the trial proceedings fundamentally unfair, and trial errors that, but  for the deficient performance of counsel, would likely have resulted in a different outcome.

### A.    STRUCTURAL ERRORS

20.    The Supreme Court has made clear that there is no "single, inflexible criterion" that must be met in order for an error to be deemed "structural" and prejudicial per se. "Structural error are errors that affect the 'entire conduct of the [proceeding], from beginning to end.' ... The 'highly exceptional' category of structural errors includes, for example, the denial of counsel of choice." See *Greer v. United States,* 141 S. Ct. 2090, 2100 (2021).

21.    An error is structural if the error always results in fundamental unfairness. An example would be when "an indigent defendant is denied an attorney... the resulting trial is always a fundamentally unfair one". *Weaver,* 137 S. Ct., at 1908. Moreover, it would be futile for the government to try to show harmlessness. Id.

22.    When a defendant is denied the right to select his or her own attorney, the precise effect of the violation cannot be ascertained. "See *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n. 4(2006). The denial of the right to counsel of choice should be deemed "structural" on this reasoning given that" it is impossible to know what different choices the [denied] counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings." *Id.*

23.     As such, harmless error analysis would be nothing more than "a speculation into what might have occurred in an alternate universe." See *Brecht v. Abrahamson,* 507 U.S. 619, 629 (1983*); Gonzalez-Lopez,* 548 U.S. at n.4. Thus, a structural error, i.e., the denial of counsel of choice, necessitates reversal. See *United States v. Davila,* 568 U.S. 597, 611 (2013); *Gonzalez-Lopez,* 548 U.S. at 150, 152.

24.     In this case the Defendant repeatedly notified the district court of progressive issues with counsel. The district court encouraged counsel to attempt to talk with the Defendant to work things out. The district court held three separate ex-parte hearings with the Defendant and counsel. At each hearing the district court forced counsel and the Defendant to continue despite clear and compelling testimony from counsel and the Defendant that there was a complete breakdown in communications. Put simply, the district court was on notice the attorney-client relationship was irretrievably broken. See Hearing Tr. *January 4, 2016, pg. 8. L. 10-14; pgs. 13-14; L. 18-25, 1-15.*

> COURT: Mr. Matters, would you care to respond to each of Mr. Elbeblawy's points sir?
> MATTERS: Your Honor, based on the three weeks of discussions with my client we have irreconcilable differences which are going to preclude me from representing him.

25.     The conflict between counsel and the Defendant culminated in a mid-trial dissolution of the relationship by the district court.

26.     At *NO TIME* did the defendant *request* to represent himself. Instead, the defendant requested *substitute* counsel. Unlike the defendant in *Fischetti v. Johnson,* 384 F. 3d 140, 154 (3rd Cir. 2004) where the defendant had fired *THREE* court appointed attorneys, Mr. Elbeblawy had a single court appointed attorney.

27.     Throughout the proceedings the defendant was courteous, respectful, and adhered to proper decorum with the court. CF. *United States v. Thomas*, 357 F. 3d 357, (3rd Cir. 2004) where defendant engaged in misconduct concerning *FOUR* different attorneys, including threats, verbal abuse, tearing up correspondence, etc.

28.     Closer to home, *United States v. Melillo,* 2015 U.S. App. Lexis 19796, is instructive on the Sixth Amendment guarantee of counsel and an abusive defendant who attempts to manipulate the judicial process. "[A] defendant has an absolute right to counsel, but it is equally true that a defendant has no right to dictate who that appointed counsel will be." *Id.* at 25-26 (quoting *Thomas v. Wainwright,* 767 F. 2d 738, 742 (11th Cir. 1985)).

29.     When an indigent defendant requests that the district court appoint new or substitute counsel, the defendant bears the burden to show "good cause" to support his or her request. Id. at 26 (quoting *United States v. Garey,* 540, F. 3d 1253, 1263 (11th Cir. 2008) (En Banc)).

### (1)     FUNDAMENTAL CONSTITUTIONAL RIGHT: RIGHT TO COUNSEL

30.     Mr. Elbeblawy avers that multiple errors occurred during the pre-trial phase and the trial phase, culminating on January 19, 2016, the fourth day of his trial. First, the district court denied the Defendant's *multiple* requests to substitute counsel based on the wrong criteria. Second, the district court forced the Defendant into a Hobson's Choice of continuing trial with  counsel with whom he deemed (and counsel agreed) was conflicted or waive his right to counsel *before* being informed of the potential consequences. Trial Tr., Day 4 (sealed), pg. 17-18, L. 12-25, 1-13. Third, the district court prejudiced the Defendant's decision to seek to retain counsel through the local Suni Muslim community by preemptively stating, "I'm not going to continue the trial… but you understand that you have the right to be represented by an attorney." Trial Tr. Day 4 (sealed) pg. 19, L. 8-20. Fourth, the district court erred in permitting a defendant with no experience, training, or understanding of the legal process or procedure to proceed pro se in the middle of a complex trial.

31.     The district court erred in its denial of Mr. Elbeblawy's numerous requests to substitute counsel. The district court conducted a colloquy that exposed a breakdown in communications, a

fundamental loss of trust and confidence, such that despite multiple attempts at reconciliation, the attorney-client relationship was irretrievably broken.

32.     The critical error that deprived the defendant of his right to counsel of choice, was *BEFORE* the trial began. In the January 4, 2016, hearing, Matters responded clearly and emphatically to the district court's inquiry, could he [Matters] could not continue to represent Mr. Elbeblawy. Matters testified, "we have irreconcilable differences which are going to preclude me from being able to represent him [ Mr. Elbeblawy]." Hearing Tr. January 4, 2016, pg. 8 L. 10-14.

33.     Unsatisfied with Mr. Matter's professional and ethical judgment, the district court again pressured counsel asking "should the court deny Mr. Elbeblawy's motion, do you believe that you can continue to represent Mr. Elbeblawy effectively?" Hr. Tr. January 4, 2016, Pg. 13, L. 18-21. Again, Matters was clear and unambiguous in his response to the district court, "No… I cannot have conversations with him any longer, wherein they are helpful to either of us." Hr. Tr., January 4, 2016, pg. 14, L. 11-12.

34.     The Defendant not only demonstrated "good cause" (See *Garey*, 540 F. 3d at 1263) but also counsel answered the district court *not once, but twice*, that he could not effectively represent Mr. Elbeblawy because there was a complete breakdown in communication and the attorney-client relationship was irretrievably broken.

35.     Bad news does not get better with age, the district court created a structural error – the denial of effective counsel and the denial of counsel of choice – that pervaded the entire trial and resulted in a fundamentally unfair proceeding.

## (2)   FUNDAMENTAL CONSTITUTIONAL RIGHT: RIGHT TO COUNSEL

36.     Second, the district court reinforced the structural error by forcing the defendant into a Hobson's Choice – (a) an attorney who has already told the court he [the attorney] does not believe he can effectively represent him or (b) that he [the Defendant] must endeavor to represent himself. Mr. Elbeblawy never requested to represent himself. Instead, on multiple occasions he asked, as was his legitimate right, for another attorney who *did believe* he could have represented him effectively. The Defendant did not request a specific attorney, merely that he be provided with counsel who would at least start the trial with the professional belief that he could provide the type of professional counsel guaranteed by the Sixth Amendment.

37.     The district court abused its discretion by substituting its belief that counsel could be effective in his representation despite counsels' and the defendant's explicit statements to the contrary. When Mr. Matters testified in his professional judgment, grounded in more than thirty-five years of experience, that "we have irreconcilable differences which are going to preclude me from being able to represent him" effectively, "good cause" had been shown. The district court offered no rationale why Mr. Elbeblawy could expect, or would receive, effective counsel from an attorney who had testified that he *could not* represent him effectively.

38.     The Hobson's Choice was further solidified by the district court's unprompted admonition, that under no circumstances, "I'm not going to continue the trial." Trial Tr., Day 4 (sealed), pg. 19, L. 8-19. The district court badgered the defendant to either accept Mr. Matters as counsel or waive his right to counsel *BEFORE* explaining the potential dangers of that choice.

39.     The district court's repeated statements that the defendant was entitled to counsel, so confused Mr. Elbeblawy that he asked "[w]hat type of attorney? Like a – like somebody I hire? … Private attorney you mean?" *Id.*

40.     Third, the district court prejudiced the defendant by actively discouraging him from seeking to retain counsel through the assistance of the local Sunni Muslim Community. The district court's unprompted, preemptive statement that it would not continue trial served to dissuade Mr. Elbeblawy from potentially seeking private legal assistance. The district court exerted improper influence over the defendant's decisions regarding counsel. This improper influence had the effect of underscoring the structural errors, i.e., deprivation of the Sixth Amendment right to counsel.

41.     Fourth, the district court errored in permitting Mr. Elbeblawy to represent himself. Notwithstanding the Hobson's Choice that led to this decision, based on the criteria set forth in *Faretta v. California*, 422 U.S. 806 (1975), the Defendant was completely unqualified and wholly unprepared to defend himself in a complex criminal trial. Even less so, was Mr. Elbeblawy positioned to take the reins of his own defense *mid-trial*.

42.     The most appropriate remedy to the situation was also the remedy most readily available to the district court, i.e., substitution of counsel. The *Faretta* colloquy conducted by the district court clearly demonstrated the degree to which Mr. Elbeblawy was incapable of defending himself. *Trial Tr. Day 4 pg. 44, L. 1-17.*

> THE COURT: Are you familiar with the Rules of Criminal Procedure?
> THE DEFENDANT: No.
> THE COURT: Are you familiar with the Federal Evidence Code?
> THE DEFENDANT: No.
> THE COURT: Mr. Elbeblawy, I recognized that you have absolutely no legal training, and that would include the knowledge of any objections and what may constitute proper impeachment. You are aware that that is a detriment to you in making a decision to represent yourself?
> THE DEFENDANT: I'm fully taking the responsibility.
> THE COURT: You will not know when and how to make proper objections.
> THE DEFENDANT: I'm sorry?

43.     Where the above transcript reads as though a person with no legal training made a voluntary, knowing waiver of his right to counsel, fully aware of the dangers, the sealed transcript tells a different and

very important story. The "public colloquy" took place *after* the more informative "sealed colloquy". It was the district court itself that recognized the impropriety of its decision. The district court's statement was prescient, "Mr. Elbeblawy, you have already made clear just by your question *your lack of understanding* of the jury trial process." Trial Tr. Day 4 (sealed) pg. 28, L. 20-22.

44.     When the district court recognized in the record the defendant's "lack of understanding of the jury trial process," by definition Mr. Elbeblawy's waiver of his right to counsel could not be "knowing" as required, and was thus invalid.

45.     In order to determine of the criminal defendant has effectively waived the right to counsel the court has held that "a district court must consider the totality-of-circumstances." See *Landry v. Cain*, 445 Fed. Appx. 817, 822-823 (5th Cir. 2011). Additionally, the courts have held that "[t]the presence of standby counsel does not satisfy the right to counsel, and harmless error review is unavailable when a court errs in denying a criminal defendant the right to counsel at trial. See *United States v. Virgil*, 444 F.3d 447, 453 and 455-456; see also United States v. Davis, 269 F.3d 514, 519.

**(3)     GOVERNMENT MISCONDUCT: SHAM PROCESS/DOUBLE JEOPARDY**

46.     The United States first attempted to prosecute this matter in case No. 1:15-CR-20456-BB. When the parties were unable to move forward with a plea agreement, and the Defendant moved to proceed with trial, the Plaintiff was *not prepared* for a trial. However, Mr. Elbeblawy had already been arrested, arraigned, and the speedy trial "clock" was ticking. The government averred it was going to indict Mr. Elbeblawy for the same offenses as he was charged in this case. After a continuance by the Defendant to review discovery – time exempted from the speedy trial clock – the United States was still unprepared to move forward with trial.

11



**THE CODEX OF SCRUTINY:**
A Study In The Practical Failure Of Judicial Oversight In The District Courts

47.     At a calendar call, the district court ordered the United States to produce the discovery items and witnesses for its case-in-chief within 24 hours and to be prepared to begin trial as set. The following day the district court held another calendar call to confirm the government's compliance and preparation for trial.

48.     Again, the United States was not prepared for trial, and instead sought a continuance to seek an indictment of Mr. Elbeblawy. The district court *reminded* the United States the defendant had waived indictment, and was ready to proceed to trial on information.

49.     The government then acted in "bad faith" by moving to dismiss under Fed. R. Crim. P. 48(a). Counsel for the defendant failed to timely object to the United States "bad faith" motion, and the district court dismissed the matter without prejudice.

50.     Jeopardy does not attach until the trier-of-facts, e.g., the petit jury, is seated. Unless, as in this case, the United States acted in "bad faith". The *facts* in this matter are simple: (1) all of the alleged instances of overt acts are the same; (2) all of the aforementioned were known and available in the matter

of the first case; (3) the United States made the arrest and brought the case before the district court with full knowledge of its obligations under the Speedy Trial Act [ 18 U.S.C. § 3161]; and (4) when the United States was unable to extort a plea from the Defendant, the United States *knew* it lacked the necessary elements to prevail in a trial, *at that time and under the time requirements of the Speedy Trial Act,* it acted in bad faith by moving to dismiss without even a hint of legitimacy or legal pretext.

51.     Absent the ability to bring the case to trial forthright under the law, the United States acted in "bad faith" having sought (and received) a dismissal under Fed. R. Crim. P. 48(a) without prejudice. The transcripts of the *ore tenus* motion demonstrated the United States had no legitimate reason, nor offered any reason, for the dismissal other than having been unable to proceed to trial within the time set forth under the statute. See Exhibit "A"

52.     It is because the United States' actions were motivated and its intent was to thwart the Speedy Trial Act, that its actions were in "bad faith". Therein, jeopardy due to "bad faith" actions on the part of the United States, had attached and, the dismissal without prejudice was improper. Moreover, the "double jeopardy trap" employed by the United States and the error of the district court in its failure to recognize its lack of jurisdiction, served to further establish structural error in this case.

## B.     TRIAL ERRORS

53.     Mr. Elbeblawy avers that trial and appellate counsel's performance was deficient to the extent that it fell below the bar for effective representation under the Sixth Amendment.

### (1) DEFICIENT PERFORMANCE OF TRIAL COUNSEL

54.     The hallmark of any reasonable defense strategy is rooted in an investigation of the fundamental facts of the case. See *United States v. Green* 882 F.2d. 994, 1003 (5th Cir. 1989) (citing *Strickland,* 466 U.S.C. at 687). In this case, Michael Matters, C.J.A. appointed defense counsel, despite having more than thirty-five years of criminal defense experience, failed to investigate the

basic facts and circumstances of *this case,* and their relationship to the previous case. Had Mr. Matters engaged in any meaningful investigative efforts, he would have (a) notified the district court of a challenge to its jurisdiction, (b) filed a meritorious motion to dismiss for lack of jurisdiction, and (c) advised Mr. Elbeblawy of the need to file a writ of Coram Nobis, to correct the improper dismissal of the previous case See *Unites States v. Torres,* 282 F.3d 1241, 1256 n.6 (10th Cir. 2002). In fact, however, Mr. Matters failed to do any of those things because he failed to investigate the case he was assigned by the court.

55. Notwithstanding his failure to investigate, Mr. Matters' performance was deficient where he failed to inform the Defendant of the opportunity to enter into a "conditional plea" contingent on an appeal of the jurisdictional challenge, if the district court had denied a motion to dismiss on jurisdictional grounds. "Direct review of an adverse ruling on a pretrial motion is available only if the defendant expressly preserves that right by entering a conditional guilty plea." *United States v. Locklear,* 581 Fed. Appx. 217, 218, (4th Cir. 2014) (quoting *United States v. Abramski*, 706 F.3d 307, 314 (4th Cir. 2013), aff'd. 134 S. Ct. 2259, 189 L. Ed. 2d 262 (2014).

56. The trial in this matter eminated from the breakdown in plea negotiations. Had counsel presented Mr. Elbeblawy the opportunity to choose between a plea desired by the United States with a lower potential sentence than at risk in trial contingent on a "win-go-free" appeal, any rational person would have accepted the conditional plea agreement.

57. "A defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Missouri v. Frye,* 132 S. Ct. 1399, 1410 (2012). In this case, however, this second case was set for trial as the direct result of failed plea negotiations. The United States wanted a plea agreement as evidenced by the record. The defendant believed the government had exhausted its *lawful* opportunity to seek a conviction on the specific facts and conduct in dispute.

14

58.    Put simply, Mr. Elbeblawy believed the United States had "cheated", had side-stepped the law, in an attempt to prosecute him a second time. Had Mr. Matters filed the meritorious motion to dismiss for lack of jurisdiction, based on a bad faith double jeopardy claim, and the district court denied it, the Defendant, the United States, and the district court would all have likely agreed to a conditional plea. A conditional plea under those circumstances would have been favorable to all parties. Specifically, a conditional plea would have address (1) the Defendant's double jeopardy/government cheating claim; (2) guaranteed a conviction with an appeal waiver for the United States; and (3) avoided the necessity of a jury trial for the district court.

59.    Stated differently, while a plea offer is not a right, a competent attorney, upon due diligence, is obligated to inform his client of his right to plea guilty. Moreover, when circumstances dictate that plea agreement would offer a defendant substantial potential benefits, as was the case here, the attorney is obligated to advise and pursue such a plea. In this case when the facts and circumstances all but compelled a plea agreement, Mr. Matters' failure to investigate, file a meritorious motion to dismiss, or to advise his client, and seek a conditional plea, was both negligent and deficient performance. Mr. Matters' failure to advise his client of a viable legal strategy was a violation of Florida Bar Association. R. 4-21.

60.    Mr. Matters' professional representation was deficient, when upon his own professional judgment, his attorney-client relationship with Mr. Elbeblawy was irretrievably broken and they could no longer communicate effectively. Mr. Matters reached this conclusion BEFORE the trial commenced, but he failed to timely file a meritorious motion to withdraw. Such a motion was required under Florida Bar Association. Rule 4-1.16.

61.    Instead, Mr. Matters forced the Defendant to write multiple letters to the district court to request  substitute counsel.  The district court erred in the denial of Mr. Elbeblawy's request, supra, however, it would likely have viewed a motion to withdraw from professional counsel in a different light.

See *Melillo,* 631 Fed. Appx. at 766. Mr. Matters' failure to adhere to standards of professional conduct led to the festering of an ineffective attorney-client relationship that resulted in the prejudicial effects of a mid-trial termination of counsel.

62.     The corrosive effects of Mr. Matters' failure to file a meritorious motion to withdraw that culminated in the district court's termination were exacerbated by his acceptance of appointment as stand by counsel. For all of the reasons Mr. Matters could not function effectively as "counsel", i.e., inability to communicate, irretrievably broken relationship, he could not and did not function effectively as "standby" counsel.

63.     Mr. Matters's failure to object to his appointment as standby counsel served to buttress the overarching structural errors that pervaded the proceeding, Mr. Matters' acceptance of his appointment as standby counsel deprived Mr. Elbeblawy of the assistance of any counsel, professional, effective, standby, or any other kind. Additionally, his failure to object to an inherently conflicted appointment ran afoul of Florida Bar Association. R. 4-1.7, 4-1.16, and 4-3.1.

64.     Mr. Matters's performance was deficient even in the ex parte hearing that resulted in his termination, Mr. Matters was acutely aware of his client's limitations in language, legal, experience, and understanding. The district court itself stated of Mr. Elbeblawy, "you have already made clear just by your questions your lack of understanding …". As counsel for the Defendant, Mr. Matters was even more atuned to his client's fundamental lack of understanding. However, Mr. Matters did nothing to advocate for substitution of counsel in lieu of allowing a defendant to make a fatal decision he was hopelessly ill equipped to understand. In so doing, Mr. Matters' failure to advocate for his client was as reprehensible as it was ineffectual. Again, Mr. Matters' deficient and prejudicial performance was volitive of Florida Bar Association. R. 4-2.1.

### (2)   DEFICIENT PERFORMANCE OF APPELLATE COUNSEL

65.     Appellate counsel, Richard C. Klugh's, performance was deficient where he failed to raise a meritorious issue on appeal. Specifically, the structural errors of the district court's deprivation of counsel of choice, the Sixth Amendment right to counsel, and the jurisdictional challenge (noting that due to trial counsel's deficient performance, direct review of the jurisdictional challenge would have been limited to plan error). Mr. Elbeblawy was prejudiced by appellate counsel's deficient performance where the standard of review for per se errors or structural errors is automatic reversal resulting in a new trial, but subject to *Strickland* on a collateral IAC claim.

66.     Additionally, because the issue was available but not raised, further prejudice ensued by exposing the defendant to the procedural default doctrine. The United States is entitled, and may, assert procedural default as an affirmative defense.

67.     But for Mr. Klugh's deficient performance, Mr. Elbeblawy's review of structural errors in his trial would have been viewed under a much more favorable standard. Based on that "per se error" standard, there is a reasonable probability the outcome of his appeal would have been different.

### IV.  CONCLUSION

68.     This matter began and ended with fundamental errors that so infected the fairness of the proceedings that they undermined the reliability of the verdict.  The nature of these errors were both structural of the type that they defy -- thus the Supreme Court has consistently held -- harmless error analysis, and trial errors where the performance of counsel was so deficient as to fall below the standard of representation guaranteed by the Sixth Amendment.

69.     The United States acted in "bad faith" to bring this matter before the district court, using a "sham process" with the intent to thwart the guarantee of a prompt and fair trial.  Trial counsel's performance was deficient from the inception of his appointment.  The gross deficiency began with his

failure to investigate not merely the facts alleged by the United States but the actual circumstances that led

the United States to bring "this" case, versus the previous case, that was based on the EXACT same alleged

facts and conduct. This failure to conduct an investigation precluded trial counsel from basing his strategy

on a foundation of fact. Mr. Matters' lack of preparation not only represented a failure to adhere to the

Standards of Professional Conduct as defined by the Florida Bar Association, but also caused him to fail

in his duty to advise the Defendant of his option to pursue a conditional plea.

70.     Additionally, Trial counsel ceased to function as an advocate for the Defendant when he

assumed an adversarial position driven by a desire to protect his professional reputation. Mr. Matters'

unsolicited, disparaging, and speculative comments regarding Mr. Elbeblawy, his beliefs and his motives

were prejudicial, not based on objective facts, and served no purpose but to undermine the Defendant before

the Court and protect Matters' professional reputation.

71.     Trial counsel and appellate counsel failed to raise meritorious issues before the court either

in the form of motions in the district court and issues on appeal. The failure of counsel to undertake these

basic actions were not based on professional judgment or strategy, they were based on a lack of

preparedness and further motivated to preserve their professional reputations.

72.     The district court erred and abused its discretion in substation of its opinion regarding the

effectiveness of Mr. Matters as trial counsel, where the standard was whether the Defendant and counsel's

attorney-client relationship was irretrievably broken and whether there was a complete breakdown in their

communications. The district court ignored the direct testimony of BOTH Michael Matters and the

Defendant who stated in clear and unambiguous terms that Mr. Matters could not effectively represent Mr.

Elbeblawy and that they could no longer engage in productive communications. There could be no more

clear statements of a broken and ineffectual relationship that the one testified to by both the Defendant and

counsel.  The result -- the net effect -- of the district court's actions not only deprived the Defendant of his right to his "counsel of choice" but also of his right to any effective counsel.

73.     It was because these events took place BEFORE the trial commenced, and continued throughout the trial that the error, is deemed structural, having pervaded the entirety of the proceedings.  The district court's appointment of Mr. Matters as standby counsel in no way satisfied the Sixth Amendment's guarantee of counsel for a criminal defendant.  Moreover, the mere fact that Mr. Matters' own testimony demonstrated the conflict in their primary attorney-client relationship, necessarily precluded his subsequent appointment as standby counsel for the same reasons.  If an attorney is unable to function for professional or ethical reasons as counsel, obviously he or she cannot function as standby counsel for the same defendant.

74.     The structural errors of this case were compounded by the trial errors, they further undercut any meaningful sense of propriety in the proceedings and undermined the fundamental fairness of the proceedings.  The remedy for structural errors because of their nature, are the burden of the state.  The remedy for both the structural errors and the trial errors in this case is the VACATEUR or the judgment of conviction.

75.     The matters of justice, fairness, and public confidence in the court, must be balanced against the finality of a judgment.  In this case however, it was Dr. Martin Luther King who captured the essence of this matter, "The moral arc of the universe is long, but it bends towards justice." The congruence of justice in a matter of structural error is the vacatur of the judgment.

**WHEREFORE,** in view of the foregoing arguments and citations of authority, the Defendant respectfully moves this Court for the entry of an order to VACATE the judgment of conviction and to set this matter for further proceedings, or in the alternative, to set an evidentiary hearing in this matter.

DATED: __June 08__ , 2022

Respectfully Submitted,

Khaled Elbeblawy
Plaintiff
USM No. 08071104
Federal Correctional Institution
P. O. Box 779800
Miami, Florida 33177-9800

# Exhibit

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:15-cr-20456-BB-1


UNITED STATES OF AMERICA,

       Plaintiff,              September 21, 2015
                               9:02 a.m.
       vs.

KHALED ELBEBLAWY,

       Defendant.            Pages 1 THROUGH 4

_____

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE BETH BLOOM
UNITED STATES DISTRICT JUDGE

Appearances:

FOR THE GOVERNMENT: UNITED STATES ATTORNEY'S OFFICE
                   VASANTH SRIDHARAN, AUSA
                   1400 New York Avenue Northwest, 8th Floor
                   Washington, DC 20005


FOR THE DEFENDANT: FEDERAL PUBLIC DEFENDER'S OFFICE
                   JAN CHRISTOPHER SMITH, II
                   One East Broward Boulevard, Suite 1100
                   Fort Lauderdale, Florida 33301


COURT REPORTER:     Yvette Hernandez
                   U.S. District Court
                   400 North Miami Avenue, Room 10-2
                   Miami, Florida 33128
                   yvette_hernandez@flsd.uscourts.gov

1          (Call to order of the Court, 9:02 a.m.)

2              COURTROOM DEPUTY:  Calling Case Number 15-20456,

3    Criminal, United States of America v. Khaled Elbeblawy.

4              Counsel, please state your appearances for the record.

5              MR. SRIDHARAN:  Vasanth Sridharan for the Government.

6              MR. SMITH:  Your Honor, good morning.  Jan Smith, from

7    the Federal Defender's Office, on behalf of Mr. Elbeblawy, who

8    is present.

9              THE COURT:  Good morning to each of you.

10             Go ahead and have a seat.

11             What is the status of the case?

12             MR. SRIDHARAN:  On Thursday, we sent a proposed order

13    to dismiss the Information without prejudice.

14             THE COURT:  It was my understanding that the

15    Government was going to be convening a Grand Jury for the

16    purpose of seeking an indictment.

17             MR. SRIDHARAN:  Yes, Your Honor.

18             After deliberation, this is -- the Government decided,

19    given the unique circumstances of this case, that it wanted

20    more time to decide what the proper next step should be.  And

21    so we moved to dismiss the Information.

22             THE COURT:  Mr. Smith, does the Defense wish to be

23    heard with regard to this motion?

24             MR. SMITH:  Your Honor, we are happy with dismissal.

25    I've spoken to the Government.  I believe that they are still

1    determining the next course of action.  And I don't think

2    that -- once they dismiss, that we have, well, any course of

3    action at that point to pursue, Your Honor.

4            THE COURT:  All right.  Well, leave of court is

5    necessary to dismiss the charges at this stage, and that motion

6    is granted.

7            Is there anything further in this case?

8            MR. SMITH:  No.  Thank you, Your Honor.

9            MR. SRIDHARAN:  No, Your Honor.

10           THE COURT:  Okay.

11       (Proceedings concluded at 9:03 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES OF AMERICA          )

2   ss:

3   SOUTHERN DISTRICT OF FLORIDA  )

4                    C E R T I F I C A T E

5          I, Yvette Hernandez, Certified Shorthand Reporter in

6   and for the United States District Court for the Southern

7   District of Florida, do hereby certify that I was present at

8   and reported in machine shorthand the proceedings had the 21st

9   day of September, 2015, in the above-mentioned court; and that

10   the foregoing transcript is a true, correct, and complete

11   transcript of my stenographic notes.

12          I further certify that this transcript contains pages

13   1 - 4.

14          IN WITNESS WHEREOF, I have hereunto set my hand at

15   Miami, Florida this 15th day of December, 2021.

16

17                         /s/Yvette Hernandez
                          Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
18                         400 North Miami Avenue, 10-2
                          Miami, Florida 33128
19                         (305) 523-5698
                          yvette_hernandez@flsd.uscourts.gov
20

21

22

23

24

25

VER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / USA

FSC MIX FSC C116916

PAPER POUCH how2recycle.info

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

FOREVER / USA
FOREVER / USA

PRIORITY®
MAIL

ɜecified for domestic use.

ꞩ include up to $50 of insurance (restrictions apply).*

for domestic and many international destinations.

rance.**

/, a customs declaration form is required.

items. For details regarding claims exclusions see the
usps.com.

http://pe.usps.com for availability and limitations of coverage.

ENVELOPE
HT

ED

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

Label 400 Jan. 2013
7690-16-000-7948

F May 2020
2 1/2 x 9 1/2

694 22

FROM:

⇨08071-104⇨
Khaled Elbeblawy
Federal Correctional Institution
PO. BOX 779800
Miami, FL 33177
United States

U.S.M.S.
INSPECTED
BY

U.S.M.S.
INSPECTED
BY

TO:

LEGAL MAIL

**United States District Court**
*For the Southern District of Florida*
*United States Federal Courthouse*
*400 North Miami Avenue, RM: 8N09.*
*Miami, FL 33128-7716*

is packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.